UNITED STATES of America ex rel.
Randolph E. DICKERSON,
Petitioner,

v.

Raymond W. ANDERSON, Superin-
tendent, Delaware Correctional
Center, Respondent.

Civ. A. No. 75–234.

United States District Court,
D. Delaware.

March 22, 1976.

Richard Allen Paul, Chief Trial Atty.,
office of the Public Defender, Wilming-
ton, Del., for petitioner.

Francis A. Reardon, Deputy Atty. Gen., and John M. Willard, Asst. Atty. Gen., Wilmington, Del., for respondent.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

Randolph E. Dickerson, a state prisoner, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 from a conviction of first degree murder for which he was sentenced to a term of life imprisonment. His conviction and sentence were affirmed by the Delaware Supreme Court, Dickerson v. State, Del.Supr., 325 A.2d 367 (1974), which rejected the arguments which petitioner now advances in this court. Accordingly, petitioner has exhausted his presently available state remedies. Hendricks v. Swenson, 456 F.2d 503 (C.A. 8, 1972).

The victim, Mrs. Phyllis Margerum, who lived alone in the apartment building in which petitioner resided, was brutally murdered in December 1971 by being stabbed a minimum of 24 times with a screw driver. In March 1972, during the course of an altercation with one Dora Harris by whom he had had children, petitioner stated that he had killed the "woman downstairs" for a "lousy $54.00." Harris went to the police with this information and also signed a warrant for petitioner's arrest based on his assault upon her. Petitioner was arrested in a bar on March 11, 1972 at about 1:05 A.M. and advised of his rights as prescribed by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). On his arrival at the police station, he was again advised of his constitutional rights. Stating he understood his rights, petitioner then talked with a police officer, Sergeant Burke, whom he evidently knew, for about three hours about his problems with Dora Harris. During this long conversation, he was allowed to use the lavatory, was given sodas, cigarettes, and crackers on his request, and did not indicate a desire either to stop talking or to have an attorney present.

Until about 4:00 A.M. the discussion between Burke and petitioner contained no reference to the murder although petitioner had been a prime suspect shortly after the murder. Eventually, petitioner stated, "Burke, I know what you're after. I know what you're really after." After denying any involvement in the murder, petitioner was shown the written statement provided by Harris which implicated him. He twice asked to be taken to see Harris, but Burke told him that police regulations prevented him from complying with petitioner's request. Petitioner did not ask permission to place a telephone call or to attempt to communicate with Harris in any way other than a personal visit. (S. 259)[1] Petitioner then provided Burke with a detailed oral confession to the murder. When Burke indicated that he also wanted a written statement, petitioner for the first time asked to see an attorney. At this point all questioning stopped and an assistant public defender was summoned. After consulting with the attorney in private, petitioner made a written confession.

In this proceeding, petitioner challenges his conviction on four grounds: (1) his oral confession was obtained without a proper waiver of his constitutional rights; (2) his oral confession was involuntary; (3) the written confession was a product of the illegally secured oral confession; and (4) the loss by the state of the tape recording of his conversation with Burke constituted a denial of due process. The Court has carefully considered each of petitioner's contentions and concludes that they are without merit.

■ First, petitioner was apprised of his Miranda rights twice and indicated that he understood them. (S. 173, 183; T. 451–53)[2] The conversation was not interrupted and it was petitioner who

---

1. "S" refers to State Court transcript of the suppression hearing. (Vol. 1).

2. "T" refers to the state trial transcript.

brought up murder as a topic for discussion. Furthermore, when the petitioner wanted to halt his statement and see an attorney, the police complied fully with his requests. This subsequent exercise of his rights supports the conclusion that he understood his rights and gave his oral confession in full awareness of the rights which he was waiving. Therefore, *Miranda* fails to offer a basis for relief. Cf. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313, 44 USLW 4015 (1975).

 Second, the record fails to support petitioner's contention that his confession was exacted involuntarily. Three or four hours of interview by a single police officer without the use of verbal or physical threats does not suggest that a confession results from an overborne will or improper police conduct. Petitioner was free to terminate the discussion at any time, but he chose to continue discussing his problems with Harris. Apparently only one request of petitioner was denied during the course of his talk: his request to visit Harris, the woman whom he had physically and verbally abused just a few hours earlier. Petitioner twice made his request but abandoned it after Sergeant Burke informed him that it was prohibited by police regulations. A police officer is under no duty to take an interviewee to visit a complainant at 4:00 A.M. No request for any other communication was forthcoming; petitioner could have exercised his right—which clearly he understood—to discontinue the discussion. In sum, this Court agrees with the two Delaware courts, which scrutinized petitioner's claims, and concludes that petitioner's oral confession was voluntary.

 Third, petitioner's argument that the written confession, given after a pri-

vate conference with an attorney, was the product of an illegally acquired oral confession necessarily fails because the Court has determined that the oral confession was properly obtained.

 Fourth, a tape recording of the conversation between petitioner and Burke was inadvertently destroyed after it was determined that it was not of sufficient quality for use at petitioner's trial. The tape was returned to a safe after the police reviewed it, but apparently a police officer unconnected with petitioner's case removed the tape and recorded over the petitioner's confession. Petitioner argues that the tape could have supported the contention of petitioner's medical experts that his confession was made involuntarily. First, the record contains no suggestion that the tape was willfully or intentionally destroyed. It is fair to conclude that the tape was erased in spite of good faith efforts to preserve it. Accordingly, the unintentional loss of the tape cannot provide a basis for habeas corpus relief. *See United States v. Bryant*, 142 U.S. App.D.C. 132, 439 F.2d 642, 651 (1971). Second, it is not clear that the unintentional loss of evidence arguably material to petitioner's defense raises a constitutional claim which is, of course, a necessary predicate for habeas corpus jurisdiction. 28 U.S.C. § 2254(a). In *United States v. Augenblick*, 393 U.S. 348, 356, 89 S.Ct. 528, 533, 21 L.Ed.2d 537, 545 (1969), the Court noted that questions concerning unintentional loss of evidence by the state do not rise to a constitutional level in the absence of a showing that the evidence was purposefully suppressed. Thus, it may well be that petitioner's final claim is not even cognizable in a habeas corpus proceeding.

An order denying the writ and dismissing the petition will be entered.