# LEGO *v.* TWOMEY, WARDEN

No. 70–5037. Argued November 11, 1971—
Decided January 12, 1972

*Nathan Lewin,* by appointment of the Court, 402 U. S. 928, argued the cause and filed a brief for petitioner.

*James B. Zagel,* Assistant Attorney General of Illinois, argued the cause for respondent. With him on the brief were *William J. Scott,* Attorney General, *Joel M. Flaum,* First Assistant Attorney General, and *Warren K. Smoot,* Assistant Attorney General.

MR. JUSTICE WHITE delivered the opinion of the Court.

In 1964 this Court held that a criminal defendant who challenges the voluntariness of a confession made to officials and sought to be used against him at his trial has a due process right to a reliable determination that the confession was in fact voluntarily given and not the outcome of coercion which the Constitution forbids. *Jackson* v. *Denno,* 378 U. S. 368. While our decision made plain that only voluntary confessions may be admitted at the trial of guilt or innocence, we did not then announce, or even suggest, that the factfinder at a coercion hearing need judge voluntariness with reference to an especially severe standard of proof. Never-

theless, since *Jackson,* state and federal courts have addressed themselves to the issue with a considerable variety of opinions.[1]   We granted certiorari in this case to resolve the question.   401 U. S. 992 (1971).

---

[1] State courts that have considered the question since *Jackson* have adopted a variety of standards, most of them founded upon state law.   Many have sanctioned a standard of proof less strict than beyond a reasonable doubt, including proof of voluntariness by a preponderance of the evidence or to the satisfaction of the court or proof of voluntariness in fact. *E. g., Duncan* v. *State,* 278 Ala. 145, 176 So. 2d 840 (1965); *State* v. *Dillon,* 93 Idaho 698, 471 P. 2d 553 (1970), cert. denied, 401 U. S. 942 (1971); *People* v. *Harper,* 36 Ill. 2d 398, 223 N. E. 2d 841 (1967); *State* v. *Milow,* 199 Kan. 576, 433 P. 2d 538 (1967); *Barnhart* v. *State,* 5 Md. App. 222, 246 A. 2d 280 (1968); *Commonwealth* v. *White,* 353 Mass. 409, 232 N. E. 2d 335 (1967); *State* v. *Nolan,* 423 S. W. 2d 815 (Mo. 1968); *State* v. *White,* 146 Mont. 226, 405 P. 2d 761 (1965), cert. denied, 384 U. S. 1023 (1966); *State* v. *Brewton,* 238 Ore. 590, 395 P. 2d 874 (1964); *Commonwealth ex rel. Butler* v. *Rundle,* 429 Pa. 141, 239 A. 2d 426 (1968); *Monts* v. *State,* 218 Tenn. 31, 400 S. W. 2d 722 (1966); *State* v. *Davis,* 73 Wash. 2d 271, 438 P. 2d 185 (1968).

Other States, using state law or not specifying a basis, require proof beyond a reasonable doubt. *E. g., State* v. *Ragsdale,* 249 La. 420, 187 So. 2d 427 (1966), cert. denied, 385 U. S. 1029 (1967); *State* v. *Keiser,* 274 Minn. 265, 143 N. W. 2d 75 (1966); *State* v. *Yough,* 49 N. J. 587, 231 A. 2d 598 (1967); *People* v. *Huntley,* 15 N. Y. 2d 72, 204 N. E. 2d 179 (1965); *State* v. *Thundershield,* 83 S. D. 414, 160 N. W. 2d 408 (1968); *State ex rel. Goodchild* v. *Burke,* 27 Wis. 2d 244, 133 N. W. 2d 753 (1965), cert. denied, 384 U. S. 1017 (1966).

Two federal courts have held as an exercise of supervisory power that voluntariness must be proved beyond a reasonable doubt. *Ralph* v. *Warden,* 438 F. 2d 786, 793 (CA4 1970), clarifying *United States* v. *Inman,* 352 F. 2d 954 (CA4 1965); *Pea* v. *United States,* 130 U. S. App. D. C. 66, 397 F. 2d 627 (1967); cf. *United States* v. *Schipani,* 289 F. Supp. 43 (EDNY 1968), aff'd, 414 F. 2d 1262 (CA2 1969), cert. denied, 397 U. S. 922 (1970), requiring the Government to prove beyond a reasonable doubt that certain evidence was not tainted by violation of the Fourth Amendment.

Petitioner Lego was convicted of armed robbery in 1961 after a jury trial in Superior Court, Cook County, Illinois. The court sentenced him to prison for 25 to 50 years. The evidence introduced against Lego at trial included a confession he had made to police after arrest and while in custody at the station house. Prior to trial Lego sought to have the confession suppressed. He did not deny making it but did challenge that he had done so voluntarily. The trial judge conducted a hearing, out of the presence of the jury, at which Lego testified that police had beaten him about the head and neck with a gun butt. His explanation of this treatment was that the local police chief, a neighbor and former classmate of the robbery victim, had sought revenge upon him. Lego introduced into evidence a photograph that had been taken of him at the county jail on the day after his arrest. The photograph showed that petitioner's face had been swollen and had traces of blood on it. Lego admitted that his face had been scratched in a scuffle with the robbery victim but maintained that the encounter did not explain the condition shown in the photograph. The police chief and four officers also testified. They denied either beating or threatening petitioner and disclaimed knowledge that any other officer had done so. The trial judge resolved this credibility problem in favor of the police and ruled the confession admissible.[2] At trial, Lego testified in his own behalf. Although he did not dispute the truth of the confession directly, he did tell his version of the events that had transpired at the

---

[2] In ruling the confession admissible, the judge stated:

"The petitioner has admitted under oath he had a struggle with the complaining witness over the gun; he was wounded, obtained a facial wound. The Officers testified he was bloody at the time he was arrested.

"I don't believe the defendant's testimony at all that he was beaten up by the Police. The condition he is in is well explained by the defendant himself."

police station. The trial judge instructed the jury as to the prosecution's burden of proving guilt. He did not instruct that the jury was required to find the confession voluntary before it could be used in judging guilt or innocence.[3] On direct appeal the Illinois Supreme Court affirmed the conviction. *People* v. *Lego,* 32 Ill. 2d 76, 203 N. E. 2d 875 (1965).

Four years later petitioner challenged his conviction by seeking a writ of habeas corpus in the United States District Court for the Northern District of Illinois. He maintained that the trial judge should have found the confession voluntary beyond a reasonable doubt before admitting it into evidence. Although the judge had made no mention of the standard he used, Illinois law provided that a confession challenged as involuntary could be admitted into evidence if, at a hearing outside the presence of the jury, the judge found it voluntary by a preponderance of the evidence.[4] In the alternative petitioner argued that the voluntariness question should also have been submitted to the jury for its separate con-

---

[3] Illinois followed what we described in *Jackson* v. *Denno,* 378 U. S. 368 (1964), as "the orthodox rule, under which the judge himself solely and finally determines the voluntariness of the confession . . . ." *Id.,* at 378. While the procedures of all the States could not be neatly classified, we noted that some followed the Massachusetts procedure whereby the judge himself first resolves evidentiary conflicts and determines whether a confession is in fact voluntary. If he is unable so to conclude, the confession may not be admitted into evidence. If judged voluntary and therefore admissible, the jury must also determine the coercion issue and is instructed to ignore a confession it finds involuntary. *Id.,* at 378 n. 8. Other States had adopted the New York procedure at issue in *Jackson.* Our decision in *Jackson* cast no doubt upon the orthodox and Massachusetts procedures but did call into question the practice of every State that did not clearly follow one of these procedures. A thorough tabulation of what States did in the wake of *Jackson* appears in 3 J. Wigmore, Evidence 585–593 (J. Chadbourn rev. 1970).

[4] *People* v. *Wagoner,* 8 Ill. 2d 188, 133 N. E. 2d 24 (1956); *People* v. *Thomlison,* 400 Ill. 555, 81 N. E. 2d 434 (1948).

sideration. After first denying the writ for failure to exhaust state remedies, the District Court granted a rehearing motion, concluded that Lego had no state remedy then available to him and denied relief on the merits. *United States ex rel. Lego* v. *Pate,* 308 F. Supp. 38 (1970).[5] The Court of Appeals for the Seventh Circuit affirmed.[6]

## I

Petitioner challenges the judgment of the Court of Appeals on three grounds. The first is that he was not proved guilty beyond a reasonable doubt as required by *In re Winship,* 397 U. S. 358 (1970), because the confession used against him at his trial had been proved voluntary only by a preponderance of the evidence. Implicit in the claim is an assumption that a voluntariness hearing is designed to enhance the reliability of jury verdicts. To judge whether that is so we must return to *Jackson* v. *Denno,* 378 U. S. 368 (1964).

In New York prior to *Jackson,* juries most often determined the voluntariness of confessions and hence whether confessions could be used in deciding guilt or innocence. Trial judges were required to make an initial determination and could exclude a confession, but only if it could not under any circumstances be deemed voluntary.[7] When voluntariness was fairly debatable, either because a dispute of fact existed or because reasonable men could have drawn differing inferences from undisputed facts, the question whether the confession violated due process was for the jury. This meant the confession

---

[5] Respondent makes no contention here that petitioner either waived the right to adjudicate his federal claims or deliberately bypassed state procedures for testing those claims. Cf. *Fay* v. *Noia,* 372 U. S. 391, 439 (1963).

[6] The Seventh Circuit's affirmance is unreported. *United States ex rel. Lego* v. *Pate,* No. 18313 (CA7 Oct. 8, 1970).

[7] A more thorough description of the New York procedure is found in *Jackson* v. *Denno,* 378 U. S., at 377–391.

was introduced at the trial itself. If evidence challenging its voluntariness were adduced, the jury was instructed first to pass upon voluntariness and, if it found the confession involuntary, ignore it in determining guilt. If, on the other hand, the confession were found to be voluntary, the jury was then free to consider its truth or falsity and give the confession an appropriate weight in judging guilt or innocence.

We concluded that the New York procedure was constitutionally defective because at no point along the way did a criminal defendant receive a clear-cut determination that the confession used against him was in fact voluntary. The trial judge was not entitled to exclude a confession merely because he himself would have found it involuntary, and, while we recognized that the jury was empowered to perform that function, we doubted it could do so reliably. Precisely because confessions of guilt, whether coerced or freely given, may be truthful and potent evidence, we did not believe a jury could be called upon to ignore the probative value of a truthful but coerced confession; it was also likely, we thought, that in judging voluntariness itself the jury would be influenced by the reliability of a confession it considered an accurate account of the facts. "It is now axiomatic," we said,

> "that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, *Rogers* v. *Richmond,* 365 U. S. 534, and even though there is ample evidence aside from the confession to support the conviction. *Malinski* v. *New York,* 324 U. S. 401; *Stroble* v. *California,* 343 U. S. 181; *Payne* v. *Arkansas,* 356 U. S. 560. Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the con-

fession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession. *Rogers* v. *Richmond, supra.*" [8]

We did not think it necessary, or even appropriate, in *Jackson* to announce that prosecutors would be required to meet a particular burden of proof in a *Jackson* hearing held before the trial judge.[9]  Indeed, the then-established duty to determine voluntariness had not been framed in terms of a burden of proof,[10] nor has it been since *Jackson* was decided.[11]  We could fairly assume then, as we can now, that a judge would admit into evidence only those confessions that he reliably found, at least by a preponderance of the evidence, had been made voluntarily.

We noted in *Jackson* that there may be a relationship between the involuntariness of a confession and its unreliability.[12]  But our decision was not based in the

---

[8] *Jackson* v. *Denno,* 378 U. S., at 376–377.

[9] "Judge" is used here and throughout the opinion to mean a factfinder, whether trial judge or jury, at a voluntariness hearing. The proscription against permitting the jury that passes upon guilt or innocence to judge voluntariness in the same proceeding does not preclude the States from impaneling a separate jury to determine voluntariness. *Jackson* v. *Denno,* 378 U. S., at 391 n. 19.

[10] See, *e. g., Haynes* v. *Washington,* 373 U. S. 503 (1963); *Spano* v. *New York,* 360 U. S. 315 (1959); *Payne* v. *Arkansas,* 356 U. S. 560 (1958).

[11] See, *e. g., Frazier* v. *Cupp,* 394 U. S. 731 (1969); *Boulden* v. *Holman,* 394 U. S. 478 (1969); *Harrison* v. *United States,* 392 U. S. 219 (1968); *Greenwald* v. *Wisconsin,* 390 U. S. 519 (1968); *Clewis* v. *Texas,* 386 U. S. 707 (1967); *Davis* v. *North Carolina,* 384 U. S. 737 (1966); cf. *Procunier* v. *Atchley,* 400 U. S. 446 (1971).

[12] We noted that coerced confessions are forbidden in part because of their "probable unreliability." *Jackson* v. *Denno,* 378 U. S., at 385–386.  However, it had been settled when this Court decided *Jackson* that the exclusion of unreliable confessions is not the purpose that a voluntariness hearing is designed to

slightest on the fear that juries might misjudge the accuracy of confessions and arrive at erroneous determinations of guilt or innocence. That case was not aimed at reducing the possibility of convicting innocent men.

Quite the contrary, we feared that the reliability and truthfulness of even coerced confessions could impermissibly influence a jury's judgment as to voluntariness. The use of coerced confessions, whether true or false, is forbidden because the method used to extract them offends constitutional principles. *Rogers* v. *Richmond,* 365 U. S. 534, 540–541 (1961).[13] The procedure we established in *Jackson* was designed to safeguard the right of an individual, entirely apart from his guilt or innocence, not to be compelled to condemn himself by his own utterances. Nothing in *Jackson* questioned the province or capacity of juries to assess the truthfulness of confessions. Nothing in that opinion took from the jury any evidence relating to the accuracy or weight of confessions admitted into evidence. A defendant has

---

serve. *Rogers* v. *Richmond,* 365 U. S. 534 (1961). The sole issue in such a hearing is whether a confession was coerced. Whether it be true or false is irrelevant; indeed, such an inquiry is forbidden. The judge may not take into consideration evidence that would indicate that the confession, though compelled, is reliable, even highly so. *Id.,* at 545. As difficult as such tasks may be to accomplish, the judge is also duty-bound to ignore implications of reliability in facts relevant to coercion and to shut from his mind any internal evidence of authenticity that a confession itself may bear.

[13] In *Jackson,* 378 U. S., at 377–391, we traced the genesis of the view that due process forbids the use of coerced confessions, whether or not reliable. The Court had departed from that view in *Stein* v. *New York,* 346 U. S. 156 (1953), whose premise was that a confession is excludable because of its inherent untrustworthiness. The *Stein* premise was repudiated in *Rogers* v. *Richmond* and *Rogers* was reaffirmed in *Davis* v. *North Carolina,* 384 U. S., at 739, and *Johnson* v. *New Jersey,* 384 U. S. 719, 729 n. 9 (1966). That case continues to serve as the basis for evaluating coercion claims. See cases cited in n. 11, *supra.*

been as free since *Jackson* as he was before to familiarize a jury with circumstances that attend the taking of his confession, including facts bearing upon its weight and voluntariness.[14]   In like measure, of course, juries have been at liberty to disregard confessions that are insufficiently corroborated or otherwise deemed unworthy of belief.

Since the purpose that a voluntariness hearing is designed to serve has nothing whatever to do with improving the reliability of jury verdicts, we cannot accept the charge that judging the admissibility of a confession by a preponderance of the evidence undermines the mandate of *In re Winship*, 397 U. S. 358 (1970).   Our decision in *Winship* was not concerned with standards for determining the admissibility of evidence or with the prosecution's burden of proof at a suppression hearing when evidence is challenged on constitutional grounds.   *Winship* went no further than to confirm the fundamental right that protects "the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.*, at 364.   A high standard of proof is

---

[14] This is the course that petitioner pursued. Cf. *Jackson* v. *Denno*, 378 U. S., at 386 n. 13.   Although 18 U. S. C. § 3501 (a) is inapplicable here, it is relevant to note the provisions of that section:

"(a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given.   Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness.   If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances."

necessary, we said, to ensure against unjust convictions by giving substance to the presumption of innocence. *Id.,* at 363. A guilty verdict is not rendered less reliable or less consonant with *Winship* simply because the admissibility of a confession is determined by a less stringent standard. Petitioner does not maintain that either his confession or its voluntariness is an element of the crime with which he was charged. He does not challenge the constitutionality of the standard by which the jury was instructed to decide his guilt or innocence; nor does he question the sufficiency of the evidence that reached the jury to satisfy the proper standard of proof. Petitioner's rights under *Winship* have not been violated.[15]

## II

Even conceding that *Winship* is inapplicable because the purpose of a voluntariness hearing is not to implement the presumption of innocence, petitioner presses for reversal on the alternative ground that evidence offered against a defendant at a criminal trial and challenged on constitutional grounds must be determined admissible beyond a reasonable doubt in order to give adequate protection to those values that exclusionary rules are designed to serve. *Jackson* v. *Denno, supra,* an offspring of *Brown* v. *Mississippi,* 297 U. S. 278 (1936), requires judicial rulings on voluntariness prior to admitting confessions. *Miranda* v. *Arizona,* 384

---

[15] Nothing is to be gained from restating the constitutional rule as requiring proof of guilt beyond a reasonable doubt on the basis of constitutionally obtained evidence and then arguing that rights under *Winship* are diluted unless admissibility is governed by a high standard. Transparently, this assumes the question at issue, which is whether a confession is admissible if found voluntary by a preponderance of the evidence. *United States* v. *Schipani, supra,* n. 1, followed this unsatisfactory course in a Fourth Amendment case but stopped short of basing the decision on the Constitution.

U. S. 436 (1966), excludes confessions flowing from custodial interrogations unless adequate warnings were administered and a waiver was obtained. *Weeks* v. *United States,* 232 U. S. 383 (1914), and *Mapp* v. *Ohio,* 367 U. S. 643 (1961), make impermissible the introduction of evidence obtained in violation of a defendant's Fourth Amendment rights. In each instance, and without regard to its probative value, evidence is kept from the trier of guilt or innocence for reasons wholly apart from enhancing the reliability of verdicts. These independent values, it is urged, themselves require a stricter standard of proof in judging admissibility.

The argument is straightforward and has appeal. But we are unconvinced that merely emphasizing the importance of the values served by exclusionary rules is itself sufficient demonstration that the Constitution also requires admissibility to be proved beyond reasonable doubt.[16] Evidence obtained in violation of the Fourth Amendment has been excluded from federal criminal trials for many years. *Weeks* v. *United States, supra.* The same is true of coerced confessions offered in either federal or state trials. *Bram* v. *United States,* 168 U. S. 532 (1897); *Brown* v. *Mississippi, supra.* But, from our experience over this period of time no substantial evidence has accumulated that federal rights have suffered from determining admissibility by a preponderance of the evidence. Petitioner offers nothing to suggest that admissibility rulings have been unreliable or otherwise wanting in quality because not based on some higher standard. Without good cause, we are unwilling to expand currently applicable exclusionary rules by erecting additional barriers to placing truthful and probative evi-

---

[16] It is no more persuasive to impose the stricter standard of proof as an exercise of supervisory power than as a constitutional rule. Cf. *Ralph* v. *Warden, supra,* n. 1, clarifying *United States* v. *Inman, supra,* n. 1; *Pea* v. *United States, supra,* n. 1.

dence before state juries and by revising the standards applicable in collateral proceedings. Sound reason for moving further in this direction has not been offered here nor do we discern any at the present time. This is particularly true since the exclusionary rules are very much aimed at deterring lawless conduct by police and prosecution and it is very doubtful that escalating the prosecution's burden of proof in Fourth and Fifth Amendment suppression hearings would be sufficiently productive in this respect to outweigh the public interest in placing probative evidence before juries for the purpose of arriving at truthful decisions about guilt or innocence.

To reiterate what we said in *Jackson:* when a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary. Of course, the States are free, pursuant to their own law, to adopt a higher standard. They may indeed differ as to the appropriate resolution of the values they find at stake.[17]

### III

We also reject petitioner's final contention that, even though the trial judge ruled on his coercion claim, he was entitled to have the jury decide the claim anew. To the extent this argument asserts that the judge's determination was insufficiently reliable, it is no more persuasive than petitioner's other contentions. To the extent the position assumes that a jury is better suited than a judge to determine voluntariness, it questions the basic assumptions of *Jackson* v. *Denno;* it also ignores

---

[17] See cases cited in n. 1, *supra.*

that *Jackson* neither raised any question about the constitutional validity of the so-called orthodox rule for judging the admissibility of confessions nor even suggested that the Constitution requires submission of voluntariness claims to a jury as well as a judge. Finally, *Duncan* v. *Louisiana,* 391 U. S. 145 (1968), which made the Sixth Amendment right to trial by jury applicable to the States, did not purport to change the normal rule that the admissibility of evidence is a question for the court rather than the jury. Nor did that decision require that both judge and jury pass upon the admissibility of evidence when constitutional grounds are asserted for excluding it. We are not disposed to impose as a constitutional requirement a procedure we have found wanting merely to afford petitioner a second forum for litigating his claim.

The decision of the Court of Appeals is

*Affirmed.*

MR. JUSTICE POWELL and MR. JUSTICE REHNQUIST took no part in the consideration or decision of this case.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL join, dissenting.

When the prosecution, state or federal, seeks to put in evidence an allegedly involuntary confession, its admissibility is determined by the command of the Fifth Amendment that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." *Davis* v. *North Carolina,* 384 U. S. 737, 740 (1966); *Malloy* v. *Hogan,* 378 U. S. 1, 7–8 (1964); *Bram* v. *United States,* 168 U. S. 532, 542–543 (1897). This right against compulsory self-incrimination is the "essential mainstay" of our system of criminal prosecution, *Malloy* v. *Hogan, supra,* at 7, "a system in which the State must establish guilt by evidence independently

and freely secured and may not by coercion prove its charge against an accused out of his own mouth," *Rogers* v. *Richmond,* 365 U. S. 534, 541 (1961). What is thereby protected from governmental invasion is, quite simply, "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will." *Malloy* v. *Hogan, supra,* at 8. Hence, a confession is involuntary and inadmissible unless it is "the product of a rational intellect and a free will." *Blackburn* v. *Alabama,* 361 U. S. 199, 208 (1960); see *Reck* v. *Pate,* 367 U. S. 433, 440 (1961).

Ideally, of course, a defendant's compelled utterance would never be admitted into evidence against him. As we said in *Jackson* v. *Denno,* 378 U. S. 368, 376 (1964), it is "axiomatic" that a criminal conviction cannot stand if it "is founded, in whole or in part, upon an involuntary confession . . . even though there is ample evidence aside from the confession to support the conviction." Yet I doubt that informed observers of the criminal process would deny that at least some compelled utterances slip through, even assuming scrupulous adherence to constitutional standards and the most rigorous procedural protections. *Jackson* was an attempt to move that reality somewhat closer to the ideal. We there rejected the New York rule because it "did not afford a reliable determination of the voluntariness of the confession offered in evidence at the trial" and consequently "did not adequately protect [a defendant's] right to be free of a conviction based upon a coerced confession." *Id.,* at 377. As the Court today points out, "[t]he procedure we established in *Jackson* was designed to safeguard the right of an individual, entirely apart from his guilt or innocence, not to be compelled to condemn himself by his own utterances." *Ante,* at 485.

There is no need to dwell upon the importance our American concept of justice attaches to preserving the

integrity of the constitutional privilege. Both the rule that automatically reverses a conviction when an involuntary confession was admitted at trial and the procedure established in *Jackson* for determining whether a confession was voluntary are means to further the end that no utterance of a defendant not the product of his own free choice will be used against him. The Court today reaffirms what we held in *Jackson:* "[W]hen a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered." *Ante,* at 489. But the Court goes on to hold that it follows from *Jackson* that "the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary." *Ibid.* I disagree. In my view, the rationale of *Jackson* requires the conclusion that the preponderance standard does not provide sufficient protection against the danger that involuntary confessions will be employed in criminal trials.

A *Jackson* hearing normally presents the factfinder with conflicting testimony from the defendant and law enforcement officers about what occurred during the officers' interrogation of the defendant. The factfinder's resolution of this conflict is often, as a practical matter, the final resolution of the voluntariness issue. *Jackson, supra,* at 390–391. This case is a typical example. Petitioner testified that he confessed because the police had beaten him; the police testified that there was no beating. As the Court notes, "[t]he trial judge resolved this credibility problem in favor of the police and ruled the confession admissible." *Ante,* at 480. When the question before the factfinder is whether to believe one or the other of two self-serving accounts of what has happened, it is apparent that the standard of persuasion will in many instances be of controlling significance.

See *Speiser* v. *Randall,* 357 U. S. 513, 525–526 (1958). Although the Court suggests "that federal rights have [not] suffered from determining admissibility by a preponderance of the evidence" and that there has been no showing "that admissibility rulings have been unreliable . . . because not based on some higher standard," *ante,* at 488, I do not think it can be denied, given the factual nature of the ordinary voluntariness determination, that permitting a lower standard of proof will necessarily result in the admission of more involuntary confessions than would be admitted were the prosecution required to meet a higher standard. The converse, of course, is also true. Requiring the higher standard means that some voluntary confessions will be excluded as involuntary even though they would have been found voluntary under the lower standard.

The standard of proof required for a criminal conviction presents a similar situation, yet we have held that guilt must be established by proof beyond a reasonable doubt. *In re Winship,* 397 U. S. 358, 361–364 (1970); see *id.,* at 370–372 (Harlan, J., concurring.) Permitting proof by a preponderance of the evidence would necessarily result in the conviction of more defendants who are in fact innocent. Conversely, imposing the burden of proof beyond a reasonable doubt means that more defendants who are in fact guilty are found innocent. It seems to me that the same considerations that demand the reasonable-doubt standard when guilt or innocence is at stake also demand that standard when the question is the admissibility of an allegedly involuntary confession.

We permit proof by a preponderance of the evidence in civil litigation because "we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor." *Id.,* at 371 (Harlan, J., concurring). We do not take that view in criminal cases.

We said in *Winship* that the reasonable-doubt standard "is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence . . . ." *Id.*, at 363. As Mr. Justice Harlan put it in his concurring opinion, the requirement of proof beyond a reasonable doubt is "bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free." *Id.*, at 372.

If we permit the prosecution to prove by a preponderance of the evidence that a confession was voluntary, then, to paraphrase Mr. Justice Harlan, we must be prepared to justify the view that it is no more serious in general to admit involuntary confessions than it is to exclude voluntary confessions. I am not prepared to justify that view. Compelled self-incrimination is so alien to the American sense of justice that I see no way that such a view could ever be justified. If we are to provide "concrete substance" for the command of the Fifth Amendment that no person shall be compelled to condemn himself, we must insist, as we do at the trial of guilt or innocence, that the prosecution prove that the defendant's confession was voluntary beyond a reasonable doubt.* In my judgment, to paraphrase Mr. Jus-

---

*My view that the reasonable-doubt standard must be imposed upon the prosecution does not depend upon whether that standard would be more effective than some lower standard in deterring police misconduct. When a defendant challenges his confession as involuntary, "the constitutional inquiry is not whether the conduct of state officers in obtaining the confession was shocking, but whether the confession was 'free and voluntary . . . .'" *Malloy* v. *Hogan*, 378 U. S. 1, 7 (1964). It is true that the defendant will frequently allege police misconduct, as petitioner did here. Nevertheless, as we said in *Townsend* v. *Sain*, 372 U. S. 293, 308 (1963), "[a]ny questioning by police officers which *in fact* produces a confession which is not the product of a free intellect renders that confession inadmissible." (Emphasis in original.)

tice Harlan again, the command of the Fifth Amendment reflects the determination of our society that it is worse to permit involuntary self-condemnation than it is to deprive a jury of probative evidence. Just as we do not convict when there is a reasonable doubt of guilt, we should not permit the prosecution to introduce into evidence a defendant's confession when there is a reasonable doubt that it was the product of his free and rational choice.

I add only that the absolute bar against the admission of a defendant's compelled utterance at his criminal trial is fundamentally an expression of the American commitment to the moral worth of the individual. What we said in *Winship* bears repeating here. "[U]se of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned." *Id.*, at 364. I believe that it is just as critical to our system of criminal justice that when a person's words are used against him, no reasonable doubt remains that he spoke of his own free will.