UNITED STATES of America

v.

Carl CELLEMME.

Crim. No. 77-2-F.

United States District Court,
D. Massachusetts.

May 3, 1977.

Paul E. Healy, Cambridge, Mass., for plaintiff.

Daniel D. Gallagher, Boston, Mass., for defendant.

ORDER

FREEDMAN, District Judge.

This matter is before the Court on defendant's motion to suppress the admission of a confession which he made to the police while allegedly intoxicated. The defendant thus asserts that the confession was not made voluntarily. A hearing was held on April 21, 1977 and memoranda have been submitted by the defendant and the govern-

ment. After due consideration, I conclude that the confession was not made voluntarily and is therefore inadmissible.

█ The witnesses were sequestered prior to testifying. The defendant and the government present two widely disparate accounts of the events surrounding the making of the confession. The inconsistencies can only be resolved on the basis of the credibility of the witnesses involved. While I disbelieve aspects of the testimony of witnesses on both sides, I conclude that the government has not shown by a preponderance of the evidence that the defendant's confession was made voluntarily. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

Cellemme's testimony may be summarized as follows. On the evening of November 5, 1976, at approximately 9:00 p. m., he arrived at a friend's wedding reception after having had "a couple of beers" elsewhere. At the reception he consumed three or four whiskey sours and then eight or nine cans of beer without eating any of the food which was served. Between 12:30 a. m. and 12:45 a. m. he borrowed an automobile, left the reception, and drove approximately three blocks to the China Royal Restaurant in search of Michael Belovitch, a friend. He drove into the parking lot and, not seeing his friend, began to leave. At or near the parking lot exit, Cellemme was stopped by a car containing Secret Service Special Agents Perras and Petro and Fall River Police Detective McDonald. He was then placed under arrest and taken to the Fall River police station. He does not remember whether he was given his *Miranda* rights when placed under arrest. He does recall responding in the negative to the question whether or not he had a family lawyer. On cross-examination, however, he admitted that he knew his rights as a result of having been informed of them when arrested on previous occasions and that he was actually given his *Miranda* rights upon arriving at the Fall River police station.

Cellemme insisted that he asked to call his father when he arrived at the police station but was not allowed to do so. He testified that Special Agent Petro told him that he would not see or hear from anyone until he made a statement. The defendant identified his signature on the waiver form,[1] and admitted that the time, 1:45 a. m., and date, November 6, 1976, were also written by him. However, he denied that the waiver was actually signed at 1:45 a. m., claiming that in fact it was not signed until much later. He was interrogated by Petro, Perras, McDonald and another Fall River Police Detective, Lynch, for about four or five hours. During this time he was allegedly punched in the stomach and back by Petro and Lynch. Cellemme finally agreed to give a statement which was drawn up by Petro. The defendant admitted signing the statement, but did not remember if he knew what it was when he signed it. He was not sure whether he read the statement over before signing it, adding that the police gave him a lot of papers to sign. Cellemme stated he felt the effects of the alcohol during the interrogation and was so scared and confused that he would have signed anything. One half hour to one hour after signing the statement, he was allowed to call his father. He called his father between 5:30 a. m. and 6:00 a. m. Cellemme did not seek medical help as a result of the blows from Petro and Lynch, although he told his father about them. Cellemme's father did not testify. Cellemme testified his father was at home at the time of this hearing. The defendant stated he had been a narcotics addict and had received treatment for this problem six years ago. He asserted he was not an addict on November 6, 1975.

Two other witnesses testified on the defendant's behalf. David Charette testified that a wedding reception was held on November 5, 1976 in his honor. Charette noticed the defendant arriving at about 9:00 p. m. when other non-family guests began arriving. There were approximately 30–40 guests present. Charette recalled mixing a

---

1. This form is a waiver of the *Miranda* rights.

few whiskey sours for Cellemme and seeing him drinking beer later. He did not know when Cellemme left the reception, although he was aware that Cellemme was present at midnight when a toast was given. Charette has gone drinking with the defendant on prior occasions and believes Cellemme does not have much drinking capacity. He described Cellemme as becoming incoherent, sleepy, and dazed when he has been drinking, although he would be able to drive a car and concentrate on what he's doing.

Michael Flores, another wedding guest, also recalled seeing Cellemme at the reception. He remembered seeing the defendant with a styrofoam cup, noting that such cups were used for mixed drinks. He also saw the defendant drinking beer, although he didn't know how much Cellemme consumed. Flores had gone drinking with Cellemme on prior occasions and shared Charette's opinion that Cellemme was a poor drinker and could have had five or six beers and become somewhat incoherent. He expressed no opinion whether Cellemme would be able to drive after drinking. Flores also stated he did not know if Cellemme used narcotics.

The government presented two witnesses, Special Agents Petro and Perras. Both agents testified that they were engaged in surveillance [2] in the parking lot of the China Royal Restaurant at approximately 1:30 a. m. on November 6, 1976 when they saw the defendant, Cellemme, emerge from the building, enter an automobile and drive out of the parking lot. The agents observed Cellemme drive for about a half block before they stopped him. They testified that the defendant was able to operate the automobile in a normal rather than erratic manner. Cellemme was proceeding at a normal rate of speed. Upon stopping the defendant, the agents arrested him,[3] read him his rights from a standard Secret Service form and transported him to the Fall River police headquarters, arriving at approximately 1:45 a. m. Both agents testified they detected no smell of alcohol on the defendant. Cellemme was nervous and upset, but was alert and coherent and had no trouble walking. His speech appeared normal. The defendant was again read his rights at the police station and signed a waiver of these rights at the time stated on the waiver form. The defendant immediately agreed to cooperate and did not seem reluctant to talk. Cellemme inquired what would happen if he cooperated and was told by Petro that his cooperation would be relayed to the United States Attorney. Most of the questioning was done by Petro although Perras, Lynch and McDonald also participated intermittently. Perras testified he did not see anyone strike the defendant. Cellemme's confession was reduced to writing, at Cellemme's request, and signed by Cellemme somewhere between 3:00 a. m. and 3:30 a. m. Petro stated on cross-examination that the defendant had been under surveillance and, as a result, some of the information contained in the statement was already known to the agents. Nevertheless, it took approximately two hours to get the signed confession. The defendant read the statement before he signed it and stated that it was true and complete to the best of his knowledge. Cellemme did not ask to make a phone call until between 4:30 a. m. and 5:00 a. m. He was then allowed to make a call to his father.

Special Agent Petro testified he took a personal history from Cellemme during which the defendant told him that he was a drug addict. Perras testified that upon arriving at the police station he noticed a lump on Cellemme's arm when the defendant took off his jacket.[4] When Perras inquired about the lump, Cellemme stated he had taken some narcotics a while ago. Perras asked the defendant if he felt alright, to which Cellemme responded in the affirmative.

---

**2.** The agents had had the defendant under surveillance for counterfeit activities.

**3.** Upon arrest, a pat-down of the defendant for weapons produced a coupon book in which counterfeit bills were found.

**4.** Petro was not present during this discussion.

██ The voluntariness of a confession must be determined from the totality of the circumstances. *Boulden v. Holman,* 394 U.S. 478, 480, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969), citing *Fikes v. Alabama,* 352 U.S. 191, 197, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957); *Blackburn v. Alabama,* 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). To be admissible, a confession must be the product of a rational intellect and a free will. *Blackburn v. Alabama, supra* at 208, 80 S.Ct. 274. As already noted, the government has the burden of proving, by a preponderance of the evidence, that the statement was voluntarily made. *Lego v. Twomey, supra* 404 U.S. at 489, 92 S.Ct. 619. While statements made under the influence of alcohol are not per se involuntary, *cf. United States v. Hollis,* 387 F.Supp. 213, 220 (D.Del.1975), at some point the degree of intoxication may prohibit one from acting rationally or voluntarily. The Court must therefore carefully sift the evidence to determine whether the defendant was in fact intoxicated, and if so, whether, as a result of his intoxication and the totality of the circumstances, "the confession most probably was not the product of any meaningful act of volition." *Blackburn v. Alabama, supra* 361 U.S. at 211, 80 S.Ct. at 282.

It is not unreasonable that even one who does not normally drink a lot may imbibe more alcohol than usual at the wedding reception of a friend of longstanding. Both defense witnesses testified they observed Cellemme drinking. Charette also noted that the defendant drank at least two mixed drinks as well as beer. Neither Charette nor Flores could corroborate the defendant's testimony regarding precisely how much alcohol he actually consumed. However, the Court is convinced that the defendant attended the wedding reception and consumed at least some quantity of alcohol. It therefore seems rather curious that the federal officers detected no odor of alcohol on the defendant's breath. This casts at least some doubt upon the credibility of the officers' version of events. The Court is also troubled by the government's contention, as admitted by Special Agent Petro on cross-examination, that, despite the fact that at least some of the information contained in the confession was already known to the federal officers and despite the fact that the defendant allegedly agreed immediately to cooperate, it still took approximately two hours to obtain a signed confession consisting of only one and a half typed pages.

In addition to these two aspects of the government's version, the Court is somewhat puzzled by the contention that the defendant waited approximately one and a half hours after making a confession to call anyone. No reason is offered for this delay and the Court is left to its own speculation. The existence of this unexplained delay again casts some doubt upon the credibility of the version offered by the federal officers. Moreover, the potential for coercion is increased by the fact that the defendant, after having been drinking at least to some extent and without the assistance of counsel was interrogated at various times by four government officers.

While perhaps none of these factors would independently establish that the defendant was so intoxicated as to be incapable of voluntarily confessing, they are sufficient to raise serious doubts regarding the credibility of the government's version. Consequently, the Court must conclude that the government has not met its burden in establishing that the confession was voluntarily made.

This does not mean that the Court is not also skeptical about aspects of the defendant's version of events. The defendant claims that he was beaten by Special Agent Petros and Detective Lynch. Yet the one person who could corroborate his story, Cellemme's father, was not called to testify,[5] despite his apparent availability to do so.[6]

5. Cellemme testified that at the time of the hearing on this motion, his father was at home.

6. Moreover, I find the federal officer's testimony regarding the defendant's drug addiction at the time of arrest to be more credible than the defendant's testimony. However, acceptance of the officer's testimony on this subject does not affect my ruling on the voluntariness of the

Notwithstanding this aspect of the defendant's testimony, the Court is persuaded that the defendant had been drinking considerably at the wedding reception of his friend. When this fact is viewed in conjunction with the more troublesome aspects inherent in the government's version of the events of November 6, 1976, especially the denial of detecting any odor of alcohol on the defendant, I conclude that the defendant's version of his degree of intoxication must be accepted and that the confession must therefore be suppressed. See the discussion of intoxication and involuntary statements in *United States v. Bernett*, 161 U.S.App.D.C. 363, 495 F.2d 943, 948–960 (1974) (Robinson, J., dissenting).

It is so ordered.

confession. Presumably, the fact that the defendant was a drug addict at the time of arrest and had taken narcotics awhile before the arrest could be relevant to a possible motive for involvement in counterfeiting or for impeachment of the defendant's credibility. However, the fact that he had taken drugs before his arrest could also add strength to the defendant's assertion that he was so intoxicated that he was incapable of making a voluntary confession.