**UNITED STATES of America**

v.

**Victor Manuel GERENA, et al.**

**Crim. No. H–85–50.**

United States District Court,
D. Connecticut.

March 29, 1988.

Albert E. Dabrowski, Carmen E. Van Kirk, John A. Danaher, III, Leonard C. Boyle, Asst. U.S. Attys., Stanley A. Twardy, Jr., U.S. Atty., David D. Buvinger, William J. Corcoran, Trial Attys., U.S. Dept. of Justice, Hartford, Conn., for plaintiff.

Diane Polan, New Haven, Conn., for defendants.

### RULING ON THE MOTION OF THE DEFENDANT ELIAS CASTRO–RAMOS, TO SUPPRESS STATEMENTS

CLARIE, Senior District Judge.

The defendant, Elias Castro–Ramos, moves to suppress statements made by him on the day of his arrest. The Court finds that the statement made by him to the

---

arresting officers prior to his arrest was a voluntary statement made not while in custodial interrogation. The Court further finds, however, that the three statements made by the defendant en route to the Federal Building in Hato Rey, Puerto Rico were the result of a question, designed to elicit a response, posed to the defendant by the arrest team leader after the defendant had invoked his Miranda rights. Accordingly, the motion to suppress the vehicle statements is granted.

### FACTS

The government seeks to introduce, in its case-in-chief, four statements made by the defendant to the arresting officers in the course of his arrest on August 30, 1985. The statements are: (a). If you want me, you will have to tear the door down, (b). The F.B.I. came into my house and violated the sanctity of my house and your families will suffer the same consequences, (c). We knew you were coming for us a long time ago, and (d). I will remember your faces.

The defendant, Elias Castro–Ramos, was arrested on August 30, 1985 by the F.B.I. pursuant to an arrest warrant issued based on the return of a grand jury indictment in Hartford, Connecticut. The team leader, Frank Flores, and two additional special agents of the F.B.I., Luis Fernandez and James Davis, comprised the team assigned to effectuate the arrest of the defendant. The three agents approached the defendant's residence in Caguas, Puerto Rico at approximately 6:51 a.m. on the morning of August 30, 1985. Special Agent Davis announced the F.B.I.'s identity in English; Special Agent Flores simultaneously announced their identity in spanish. Agent Flores in Spanish ordered the defendant to open the door because the F.B.I. had a warrant for his arrest. The defendant refused, despite notice that the F.B.I. would use force if necessary, to open the door. Castro–Ramos informed the agents that if they wanted him, they would have to tear down the door. (Statement a) The agents could see inside the house and watched the defendant move away from the door, out of view, towards the back of the house. At

this point, an agent broke down the door with a sledge hammer.

Special Agent Flores placed the defendant under arrest and told him that he was being arrested in connection with the Wells Fargo Robbery in Hartford, Connecticut on September 13, 1983. The defendant was escorted from the house to an F.B.I. vehicle. He was placed in the right rear passenger seat. Agent Davis sat beside the defendant in the rear; Agent Fernandez sat in the right front passenger seat and Agent Flores drove the vehicle. The defendant was transported from his home to the Federal Building in Hato Rey, approximately a one hour trip.

Shortly upon departing from the defendant's home in Caguas, Agent Fernandez read the defendant his Miranda rights in Spanish. The defendant indicated that he understood the rights but refused to sign the form waiving those rights. (Government's Exhibit No. 13). He then invoked his right to remain silent.

The defendant, who was upset and distressed at the time, spontaneously made certain general statements about the Puerto Rican independence movement. Agent Flores then asked the defendant why he had not voluntarily opened the door when so requested by the F.B.I. since he had kids in the house, and it really was not necessary to go through what the F.B.I. had to go through to enter. Flores also said that the defendant's kids were upset and were going to remember the situation. Agent Flores testified that he believed the question would elicit a response from the defendant. In fact, the defendant replied that the F.B.I. had come into his house and violated the sanctity of his house and that your [F.B.I.'s] families would suffer the same consequences. (Statement b) Subsequently, the defendant uttered that "we knew you were coming for us a long time ago." (Statement c).

Agent Flores testified that both statements (b) and (c) were made during the time period when the question concerning the defendant's refusal to open the door was posed. Agent Flores also testified that the statement which the Court has

labelled (c) may also have been a response to a statement made by either himself or Agent Fernandez concerning the F.B.I.'s investigation of the LAW rocket attack of the Federal Building.

The third statement sought to be introduced at trial by the government is the pronouncement by the defendant that he would remember the faces of the agents. (Statement d) Agent Flores could not remember the context in which the statement was made; however, Flores did testify that it might have come in response to the question about the defendant's failure to open the door. Agent Flores filed an F.B.I. form 302 investigative report on September 6, 1985 wherein he enumerated the arrest events. Although the report includes the statements made by the defendant, Agent Flores failed to include the fact that he had asked the defendant a question.

Special Agent James Davis testified that he remembered conversation between the two Spanish speaking agents, Flores and Fernandez, and the defendant. Davis did not, however, follow the conversations. Moreover, despite the testimony of Special Agents Davis and Flores to the contrary, Special Agent Fernandez testified that he did not speak to the defendant and that he could not remember whether or not Agent Flores spoke to the defendant.

Upon arrival at the Federal Building in Hato Rey, the defendant was advised of his Sixth Amendment Right to Counsel in Spanish by Agent Fernandez. He refused to sign the form waiving the Sixth Amendment Right to Counsel. (Defendant's Exhibit No. 34) The defendant was subsequently strip searched, fingerprinted, and photographed. He spoke with an officer from Pretrial Services who indicated to the F.B.I. that the defendant wanted to see a lawyer. The defendant was remanded to the custody of the United States Marshals pending his appearance before a magistrate.

## DISCUSSION OF LAW

When an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subject to questioning, the privilege against self incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege ...he must be warned prior to any questions that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation.

*Arizona v. Miranda,* 384 U.S. 436, 478–479, 86 S.Ct. 1602, 1629–1630, 16 L.Ed.2d 694 (1966).

### A. STATEMENTS MADE PRIOR TO THE ARREST

The defendant refused to open the door upon the repeated requests of the arresting F.B.I. agents on August 30, 1985. The arresting agents identified themselves in Spanish and ordered the defendant to open the door because they had a warrant for his arrest. The defendant refused, and according to the testimony of all three members of the arrest team, shouted to the agents that if they wanted him, they would have to tear down the door. (Statement a) *See* Government's Exhibits Nos. 16 & 21. This statement was uttered by the defendant prior to his arrest and his being taken into custody. The Miranda rights accorded an individual attach to situations of custodial interrogation. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [The Court's] holding." *Miranda,* 384 U.S. at 478, 86 S.Ct. at 1630. The defendant was not in custody at the time he uttered what the Court has labelled statement (a). The statement was spontaneous and voluntary. The unsolicited statement came as a result of words spoken by the F.B.I. agents of a nature "normally attendant to [effectuating an] arrest and taking an individual into custody." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1986). Thus, the Court holds that the defendant's

Fifth Amendment rights were not implicated when he made statement (a).

Moreover, the Sixth Amendment right to counsel, which attaches at the time of indictment, is not implicated in regard to voluntary statements made by an individual prior to being taken into custody. *See United States v. Satterfield*, 558 F.2d 655, 657 (2d Cir.1976), *citing, Kirby v. Illinois*, 406 U.S. 682, 691, 92 S.Ct. 1877, 1883, 32 L.Ed.2d 411 (1972); *United States v. Mohabir*, 624 F.2d 1140 (2d Cir.1980). Accordingly, the motion to suppress statement (a) is denied.

## B.  STATEMENTS MADE IN THE VEHICLE

■ The government claims that the defendant made three voluntary statements in the vehicle, during the trip from Caguas to Hato Rey, which they seek to use at trial.

Upon effectuating the arrest, Agent Flores escorted the defendant to an F.B.I. vehicle to transport him to the Federal Building in Hato Rey. Agent Fernandez informed the defendant of his Miranda rights in Spanish as the vehicle departed the residence. Agent Fernandez showed the defendant the advice of rights form. The defendant refused to sign the form acknowledging that he had received his rights. The arrest team leader made note of this refusal on the bottom of the advice of rights form. (Government's Exhibit No. 13). Agents Flores and Davis testified that the defendant did not waive his Miranda rights but rather indicated that he did not wish to answer any questions. Agent Davis further testified that it was his understanding that the defendant had invoked his right not to be questioned in the absence of an attorney. "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease ... If the individual states tha he wants an attorney, the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 473–474, 86 S.Ct. at 1628; *See also Moran v. Burbine*, 475 U.S. 412, 420, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1985).

The defendant then made certain general statements concerning the independence movement in Puerto Rico. Agent Flores testified that the defendant was upset and distressed at this time. Nothing in the record indicates that these general statements were a waiver of the Miranda rights previously invoked by the defendant. At this point, Agent Flores asked the defendant why he had not voluntarily opened he door when the F.B.I. arrived at his residence. Agent Flores testified that the question was meant to elicit a response from the defendant. In addition, Agent Flores testified that either he or Agent Fernandez made some comment to the defendant concerning the F.B.I.'s investigation of the LAW Rocket attack on the Federal Building. Agent Fernandez claimed that he limited his comments simply to the reading of the Miranda rights. The Court need not determine for purposes of this ruling whether and by whom a statement concerning the LAW Rocket attack was made because all three statements made by the defendant in the vehicle are found to be in response to the question posed by Agent Flores. The Court further finds that the questioning constituted custodial interrogation as that term has been defined.

Interrogation has been defined as "questioning or its functional equivalent ... that is to say the term interrogation under *Miranda* refers not only to express questioning but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Innis*, 446 U.S. at 301, 100 S.Ct. at 1689–90. The direct question posed by Agent Flores to Castro–Ramos, who was distressed and upset, concerning the defendant's conduct during the arrest was interrogation. Moreover, nothing in the record indicates that the defendant had waived his right to remain silent. The statements made by the defendant concerning the independence of Puerto Rico were made at a time when he was upset and distressed. He never indicated his willingness to relinquish the Miranda rights which he previously invoked and to answer questions posed by the

F.B.I. agents. Thus, statements (b) and (c) which were made in the course of the conversation initiated by the agent's question are suppressed.

The final statement which the government seeks to introduce in its case-in-chief has been labelled (d) by the Court. The government claims that the statement was voluntarily uttered by the defendant. Agent Flores could not recall at what point the defendant uttered this statement. He did testify that it was possible that the statement was made in response to his question. Agent Davis testified that he could not understand the conversation with the defendant which occurred in the vehicle. Agent Fernandez testified that, although he remembered the statements made by the defendant, he had no recollection of any question posed to the defendant by Agent Flores. "When a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, the prosecution must prove, at least by a preponderance of the evidence, that the confession was voluntary. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972); *See Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). In the present case, the government did not show that it was more probable than not that statement (d) was voluntarily uttered and not uttered in esponse to Agent Flores' question.

Accordingly, the statements uttered by the defendant in the vehicle were in response to interrogation posed by Agent Flores after the defendant had invoked his Miranda rights. Accordingly, the motion to suppress the vehicle statements is granted. For the foregoing reason, the Court finds it unnecessary to reach the issue of whether or not the statements made by the defendant were in violation of his Sixth Amendment right to Counsel.

SO ORDERED.