MEMORANDUM*
The government appeals the district court’s order suppressing incriminating statements made by Calvert Woody, a Navajo Indian, who is charged with two counts of abusive sexual contact, and two counts of aggravated sexual abuse of a *520 child, in violation of 18 U.S.C. §§ 2244(a)(5) and 2241(c). We have jurisdiction under 18 U.S.C. § 3731, and we reverse.
I
The district court’s factual findings regarding “historical trauma” and the impact of Native American culture on the voluntariness of Woody’s statements were clearly erroneous. A ‘“finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.’ ” Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).
Here, the district court relied on expert testimony from Dr. David McIntyre, who opined that Native Americans are susceptible to coercion during questioning because of cultural differences and “historical trauma.” Yet during cross-examination, Dr. McIntyre acknowledged that his “very broad generalizations about Native Americans” could not be attributed to Woody specifically and conceded that Woody had not been diagnosed with historical trauma because “[t]here is no such diagnosis.” Because these characteristics could not be attributed-to Woody individually, the district court erred in relying on them to support its finding that Woody’s will had been overborne.
Furthermore, Dr. McIntyre opined merely that cultural differences and historical trauma “may have affected the volun-tariness of Mr. Woody’s admission.” Thus, even if Dr. McIntyre’s opinions regarding cultural differences and historical trauma could be attributed to Woody individually, the district court’s reliance on such evidence was in error because the impact such attributes had on the voluntariness of Woody’s statements remained only speculative.
II
In considering the totality of the circumstances, the district court’s factual findings did not support its ruling to suppress Woody’s incriminating statements. See Dickerson v. United States, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000); Doody v. Ryan, 649 F.3d 986, 1008 (9th Cir. 2011) (en banc). Woody agreed to the interview and arrived of his own volition. Agent Priestino testified that Woody confirmed Agent Fuller’s account of the polygraph session. Woody acknowledged and. waived his rights before questioning. Woody requested a ride to his vehicle following the session. And, perhaps most importantly, the questioning took place in a noncustodial setting.
In contrast, Woody’s “low average” IQ of 82 did not constitute an intellectual disability and therefore is of limited significance in the analysis by itself, cf. United States v. Preston, 751 F.3d 1008, 1020 (9th Cir. 2014) (en banc) (holding that district court erred in failing to suppress statements of intellectually disabled 18-year-old man with an IQ of 65), and “[n]othing in the record ... suggests that [Agent Fuller’s] failure to record the interview influenced [Woody’s] admission,” United States v. Haswood, 350 F.3d 1024, 1028-29 (9th Cir. 2003); see United States v. Romo-Chavez, 681 F.3d 955, 961 n.5 (9th Cir. 2012) (“[S]uppression is not warranted simply because the government fails to record an interview.”).
In weighing the evidence before the district court and considering it in its entirety, see Preston, 751 F.3d at 1017; Doody, 649 F.3d at 1008, the totality of the cir *521 cumstances should have compelled a conclusion that it was more likely than not that Woody’s statements were voluntary. See Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). The district court therefore erred in suppressing Woody’s incriminating statements.
REVERSED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.