**UNITED STATES of America, Appellee,**

v.

**Farris Neal WRIGHT, Appellant.**

**No. 82–1837.**

United States Court of Appeals, Eighth Circuit.

Submitted April 29, 1983.

Decided May 5, 1983.

Diane S. Mackey, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Farris Neal Wright, pro se.

Before HEANEY, ROSS and FAGG, Circuit Judges.

PER CURIAM.

Farris Neal Wright was charged with two counts of violation of 18 U.S.C. § 1951, interference with interstate commerce by threats of violence. A jury found him guilty on both counts and he was sentenced on April 6, 1981. Wright filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 on March 15, 1982. The district court[1] denied the motion on June 2, 1982. Wright appeals that denial to this court pro se. We affirm.

The facts of this case center around an extortion plot against Arkansas Power and Light Company (AP & L). On November 10, 1980, the president of AP & L received two phone calls from a man who demanded $50,000 from the company. The caller threatened to damage AP & L transformers, substations and power lines if the money was not paid. The next day, the caller phoned again to direct that the money be placed under the White Oak bridge at 5:00 p.m.

The AP & L security manager contacted the FBI. A package containing money was prepared and placed under the bridge. The FBI established a stakeout around the bridge. At approximately 6:40 p.m. appellant approached the drop site and FBI Agent John Cotterman apprehended him. Appellant was searched and found to be carrying a loaded .38 caliber revolver. After apprehending appellant, agent Cotterman summoned the other agents in the vicinity, handcuffed appellant and orally advised him of his rights. About five minutes later, another agent, Jim Barton, also advised appellant of his rights. A third agent, Richard Brazile, took appellant to FBI headquarters.

Appellant arrived at FBI headquarters at approximately 7:10 p.m.; he was searched, asked for identification and his property was inventoried. At headquarters, he was advised of his rights a third time. He executed a waiver of rights form and questioning began. Appellant acknowledged his involvement in the AP & L extortion at about 9:00 p.m. He also admitted a similar attempt against the Missouri Pacific Railroad. Appellant signed a two-page statement to this effect. He was taken to the Pulaski County Jail at 10:30 p.m.

Prior to trial, appellant moved to have his statement suppressed, claiming that the FBI agents had continued to interrogate him after he asked to have an attorney present. On this appeal, he contends that the trial court erred in denying his motion to suppress. Appellant urges us to reach the same result here as the Supreme Court in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards,* the defendant had been arrested, taken to the police station and read his *Miranda* rights. The defendant indicated that he understood his rights and agreed to talk to the police. He stated that he wanted to make a deal but he wanted an attorney present before going any further. At that point the questioning ceased. The next day the police returned to resume the

---

1. The Honorable Henry Woods, United States District Court, Eastern District of Arkansas.

interrogation, although defendant had not yet consulted with an attorney. In spite of the defendant's statement that he did not wish to speak to anyone, the police insisted that he "had to" see them. They read the *Miranda* warnings again and resumed interrogation; the defendant then made an inculpatory statement. The Court held that the inculpatory statement was inadmissible at trial.

Contrary to appellant's assertions, the instant case does not present a situation akin to that in *Edwards.* The trial judge conducted a suppression hearing on December 17, 1980. At this hearing, the FBI agents testified that they apprised appellant of his rights twice at the scene of the arrest and once again at FBI headquarters. Appellant testified, both on direct and cross-examination that he never asked for an attorney during the interrogation. Following are excerpts from the suppression hearing transcript:

(direct examination by appellant's counsel)

Q. Now, Mr. Wright, at any time did you yourself request an attorney or counsel?

A. No, sir. (hearing transcript, page 8)

(cross-examination)

Q: All right. You also told us I believe that you made no request for an attorney; isn't that correct?

A. Yes, ma'am. (hearing transcript, page 11)

This testimony directly refutes appellant's claim in his brief on appeal that he repeatedly asked to have an attorney present. Any determination, then, that appellant's statement was coerced, will have to be made by examining the totality of the circumstances surrounding the interrogation. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

■ The prosecution must prove by a preponderance of the evidence that appellant's statement was rendered knowingly and voluntarily. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972); *United States v. Little Bear,* 583 F.2d 411 (8th Cir.1978). The record shows that appellant was a high school graduate. He was employed and attending vocational school at the time of his arrest. The questioning occurred in an FBI office, in typical office surroundings. For very short periods of time there were three agents present, but for the majority of the interrogation, there were only two FBI agents in the room with appellant. No threats or promises were made; appellant testified at the suppression hearing that he didn't feel threatened. Appellant never asked to have the questioning ceased. He asked to make a phone call after he signed the statement; this was allowed. He then called his brother and talked for some 18 minutes. Appellant also testified that he had been drinking brandy and cola earlier in the day, but he didn't appear to any of the agents to be intoxicated or disoriented. Custodial statements are not *per se* involuntary because of intoxication. *United States v. Brown,* 535 F.2d 424, 427 (8th Cir.1976); *United States v. Harden,* 480 F.2d 649, 651 (8th Cir.1973). The standard is whether, by reason of intoxication or other factors, the defendant's "will was overborne" or whether his statements were the "product of a rational intellect and a free will." *United States v. Brown,* 535 F.2d at 427 (quoting *Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963)).

The district court found that appellant's constitutional rights were intact and that he gave his statement voluntarily. After presentation of the evidence at the suppression hearing, the trial judge ruled from the bench:

THE COURT: All right. The Court makes the following findings.

This defendant was in full possession of his faculties at the time he gave a statement to the FBI. The statement which has been introduced in evidence as Government's Exhibit B and a copy by defendant which is Defendant's Exhibit 1 was given voluntarily by the defendant in this case, Mr. Wright. No threats or promises of any kind were made by the FBI as an inducement to him to give his

statement. His constitutional rights were given to him orally and then he signed a statement on a form provided by the FBI indicating that he understood his rights. Such statement has been read into evidence and it contains his basic constitutional rights and that's FD-form 395, signed by Mr. Wright and witnessed by Mr. Brazile and Mr. Masten.

He in full of his faculties [sic] signed the waiver of rights after these rights had been read to him by FBI agents. The motion to suppress is therefore denied * * *.

We have carefully reviewed the record in this case, bearing in mind that the question of whether or not a defendant has effectively waived his constitutional rights is not one of fact but of federal law. *See* *Brewer v. Williams,* 430 U.S. 387, 397 n. 4, 97 S.Ct. 1232, 1239 n. 4, 51 L.Ed.2d 424 (1977). We find no error in the district court's conclusions of law. The record not only supports this result, it compels it. Accordingly, we affirm the judgment of the district court.