775 A.2d 421

**Reginald JONES**

v.

**STATE of Maryland.**

**No. 910, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

July 2, 2001.

216

Martha Weisheit, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Devy Patterson Russell, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and Patricia Jessamy, State's Attorney for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before DAVIS, KENNEY and DEBORAH S. EYLER, JJ.

DAVIS, Judge.

Appellant Reginald Jones was tried for fourth degree burglary and theft of property valued under $300 before a jury in the Circuit Court for Baltimore City. On April 20, 2000, he was convicted of theft of property valued under $300 and sentenced to eighteen months imprisonment. This timely appeal followed.

Appellant raises two questions for our review, which we rephrase as follows:

I. Did the trial court err in denying appellant's motion to suppress?

II. Did the trial court misallocate the burden of proof at the suppression hearing?

We answer the first question in the negative and the second in the affirmative; we conclude the error did not effect the court's ruling and therefore affirm the judgment of the trial court.

### FACTUAL BACKGROUND

On March 13, 1999, appellant was arrested on suspicion of burglary. He was eventually charged with fourth degree burglary and theft. A hearing was held on appellant's motion to suppress physical evidence in the Circuit Court for Baltimore City and the following evidence was adduced.

Officer Bernadette Giblon of the Baltimore City Police Department testified that, on 9:45 p.m. on the night in question, she learned from a dispatcher that someone had observed two black males carrying a television and other property down Wheeling Street in downtown Baltimore. Officer Joseph Stephens remembered the description as stating that the men were carrying a television and a microwave. Approximately two blocks away from Wheeling Street, at the corner of Hanover and Hamburg Streets, Officer Giblon observed appellant standing alone with a microwave oven sitting on top of a suitcase. She testified that this area was "known for burglaries." Officer Giblon asked appellant where he was coming from and where he had gotten the microwave. Appellant's

response was "very vague"—he said that he had found the microwave in an alley and pointed "toward Charles Street." Officer Giblon knew that "there weren't any alleys in that general vicinity." Appellant was very nervous.

Officer Giblon asked appellant what was in the suitcase and he responded, after probing, "just junk. It's nothing really. I got it from the alley." Appellant consented to a search of the suitcase and Officer Giblon found a VCR inside. Appellant explained that he had found the VCR in the alley.

Officer Stephens arrived on the scene after Officer Giblon searched the suitcase. Officer Stephens recognized appellant because he had arrested him one and one-half years before for cocaine possession. He asked appellant for identification, to which appellant responded, "Joe, you know me. Joe, you know me." Appellant gave Officer Stephens permission to search his person. Officer Stephens recovered from appellant's pocket an envelope with the name "Harbor Staffing" and a return address of 924 Light Street. While Officer Stephens went to that address, Officer Giblon stayed with appellant. Officer Stephens found that a rear window and door had been forced open at 924 Light Street. He radioed Officer Giblon and advised her to place appellant under arrest. Officer Giblon acknowledged that appellant was not free to leave while Officer Stephens was investigating the address and testified that approximately ten minutes elapsed from Officer Stephens's departure and appellant's arrest.

Appellant's testimony differed from that of the officers in several key respects. He stated that, when Officer Giblon initially approached him, she sounded the siren on her police cruiser and another officer exited the cruiser with her. He also testified that he did not feel free to leave from the beginning of the encounter. Finally, appellant maintained that he never gave Officer Stephens permission to search him.

The court denied appellant's motion to suppress. It found that Officer Giblon stopped appellant, but that the stop was reasonable because it was based on

being in a neighborhood which ... was known for burglaries, also seeing [appellant] fit a description of individuals going down the street.... He's walking down the street with a microwave balanced on top of a suitcase and he's standing on a corner and there's been a call for that particular behavior.

The court also found that appellant consented to Officer Giblon searching the suitcase and to Officer Stephens searching his pockets. Once Officer Stephens investigated the address on the envelope removed from appellant's pocket and discovered that there was a break-in, the court found that Officer Giblon had probable cause to arrest appellant.

## LEGAL ANALYSIS

### I

Appellant first contends that the trial court erred in denying his motion to suppress physical evidence. He argues that his activity did not match the description given to Officer Giblon by dispatch and that she therefore lacked reasonable suspicion to stop him. Because this stop was illegal, appellant maintains, the consent to search and all evidence obtained therefrom should have been suppressed. The State contends that the trial court's conclusion was correct.

In reviewing the denial of a motion to suppress evidence under the Fourth Amendment, we look only to the record of the suppression hearing and do not consider any evidence adduced at trial. *Ferris v. State,* 355 Md. 356, 368, 735 A.2d 491 (1999). We extend great deference to the findings of the hearing court with respect to first-level findings of fact and the credibility of witnesses unless it is shown that the court's findings are clearly erroneous. *Reynolds v. State,* 130 Md.App. 304, 313, 746 A.2d 422 (1999), *cert. denied,* 358 Md. 383, 749 A.2d 173, *cert. denied,* 531 U.S. 874, 121 S.Ct. 178, 148 L.Ed.2d 122 (2000). Moreover, we view those findings of fact, and indeed the record as a whole, in the light most favorable to the State. *Id.* We review the court's legal

conclusions *de novo*, however, making our own independent constitutional evaluation as to whether the officers' encounter with appellant was lawful. *Id.*

■ The first step in our analysis is to determine whether the encounter between the police officers and appellant was a seizure implicating the Fourth Amendment. We begin with our statement from *Graham v. State*, 119 Md.App. 444, 453, 705 A.2d 82 (1998):

> The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion, and that reasonableness depends on a balance between the public interest and the individual[']s right to personal security free from arbitrary interference by law officers.

(Internal quotations omitted) (citing *Maryland v. Wilson*, 519 U.S. 408, 411, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997)). Under such an analysis, "a more intrusive governmental action requires a demonstrably more substantial legal basis in order to pass constitutional muster." *Reynolds*, 130 Md.App. at 320, 746 A.2d 422. In *Reynolds*, we explained the four levels of governmental interference with the liberty of a person on a public street, along with the level of suspicion needed to justify each level. They are, in descending order of intrusion:

> **Stop, Search, or Arrest, Pursuant to a Warrant—** Extreme governmental intrusion resulting in possible loss of liberty in addition to temporary restriction of movement—permitted because, in addition to facts tending to establish that a crime has been committed and suspect is criminal agent, neutral arbiter, magistrate, or judge with legal knowledge superior to officer has reviewed facts and indicated opinion that they constitute probable cause.

> **Warrantless Stop, Search, or Arrest—**Extreme governmental intrusion resulting in possible loss of liberty in addition to temporary restriction of movement—permitted because of the exigency of a felony having been committed or a misdemeanor being committed in officer's presence, *i.e.*,

because of the ability to personally verify the commission of the offense.

**Stop, Pursuant to *Terry v. Ohio***—Less intrusive governmental action resulting initially in temporary restriction of movement-permitted when officer observes suspicious activity indicating criminal activity afoot; bases include officer's experience, knowledge of suspect's criminal history, high crime area; officer may conduct limited "pat-down" of outer garments to detect weapons when officer has apprehension for his or her safety.

**Accosting**—Only minimally intrusive governmental action resulting in no restriction of movement—permitted as long as inquiry involves no show of authority and objective circumstances indicate a reasonable person would feel free to leave.

*Id.* at 321, 746 A.2d 422 (citing *Ferris*, 355 Md. at 374 n. 5, 735 A.2d 491).

 An accosting occurs when a police officer approaches a person and engages in an inquiry as to the person's identity, destination, and other general information, a practice also known as a field interview. *Id.* at 322–23, 746 A.2d 422. This procedure, which is of great importance in crime prevention and investigation, is constitutionally permissible without any level of suspicion "so long as the circumstances, viewed against an objective standard, indicate that a reasonable person would feel free to end the encounter and simply walk away." *Id.* at 323–24, 746 A.2d 422.

 The voluntary encounter ends, however, and a seizure of the person occurs "when the attendant circumstances demonstrate objectively that a reasonable person no longer feels free to end the encounter and walk away when police 'indicate that compliance with their requests is required by means of physical force or show of authority.'" *Id.* at 333, 746 A.2d 422 (quoting *Stanberry v. State*, 343 Md. 720, 730, 684 A.2d 823 (1996)).

Some relevant factors to be considered are: 1) the time and place of the encounter, 2) the number of officers present and

if they were uniformed, 3) whether the police moved the person to a different location or otherwise isolated him or her from others, 4) whether the police informed the person that he or she was free to go, 5) whether the police indicated that the person was suspected of a crime, 6) whether the police retained any of the person's documents, and 7) whether the police demonstrated any threatening behavior or physical contact to indicate that the person was not free to go.

*Id.* at 336, 746 A.2d 422 (citing *Ferris,* 355 Md. at 377, 735 A.2d 491).

In the case *sub judice,* the encounter between appellant and Officer Giblon began as an inquiry. The record, when viewed in the light most favorable to the State, contains no evidence of any show of force by the officers. Officer Giblon did not impede appellant's walking progress because he was standing still at the corner when she approached. Although appellant testified at the hearing that he did not feel free to end the encounter, the record does not reflect the type of coercive circumstances that would have caused a reasonable person in his position to feel compelled to remain and talk with Officer Giblon.

We next consider whether the consent given by appellant to search the suitcase and his person was voluntary. "[A] search conducted without a warrant supported by probable cause is *per se* unreasonable under the Fourth Amendment, subject to only a few exceptions." *Cherry v. State,* 86 Md.App. 234, 240, 586 A.2d 70 (1991) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). One of these exceptions is a search conducted pursuant to consent. "The State bears the burden to prove, by a preponderance of the evidence, that consent to search was freely and voluntarily given." *Id.* (citing *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)). In determining whether consent was given voluntarily, we take into account the totality of the circumstances. *Id.*

at 240–41, 586 A.2d 70 (citing *Bustamonte,* 412 U.S. at 219, 93 S.Ct. 2041).

 In the case *sub judice,* our standard of review necessitates our acceptance of the officers' testimony that appellant consented to the searches. There is no evidence of any coercion, either explicit or implicit. Indeed, appellant knew and appeared to be comfortable around Officer Stephens. We hold that appellant consented to the searches of the suitcase and his person. The trial court therefore properly denied appellant's motion to suppress.

## II

Appellant's second contention is that the trial court misallocated the burden of proof at the suppression hearing. April 19, 2000 was the date set for trial. On that morning, appellant announced his motion to suppress. Despite the State's protestations of unfair surprise, the trial court decided to hear the motion. It initially proposed that it hear the witnesses on the motion to suppress when they testified at trial. The court would make its ruling on the motion at that time. Both parties objected to this procedure, however, and the court agreed to proceed with the hearing after jury selection. The hearing was delayed further by a disagreement on the proper allocation of burdens. The court's ruling and reasoning can be best understood from a reading of the entire colloquy between it and appellant's counsel.

THE COURT: All right. Since counsel so vehemently opposed having the motion to suppress during the trial, I'm ready to proceed.

Your first witness, [appellant's counsel]. It's your motion.

[APPELLANT'S COUNSEL]: I think the State has the burden, Your Honor.

THE COURT: It's your motion. What witness would you call?

[APPELLANT'S COUNSEL]: Your Honor, I think—I think the State has—

THE COURT: It's your motion. You've made a motion to suppress evidence. Call your first witness.

[APPELLANT'S COUNSEL]: Well, I just—I just don't understand, Judge. It's not—it's not my burden to prove that it was a legal search and stop. I think the State—

THE COURT: It's your burden because you've made a motion to show me some reason why you have a motion to suppress. So now that you've made the motion, you have a witness to support that motion? Call your first witness.

I've made sure all the witnesses are present. I've made sure that they're here for you. Who will be the first witness that you would call?

[APPELLANT'S COUNSEL]: Your Honor, I'm not calling any witnesses as to the point that it was a legal stop.

THE COURT: You've made a proffer to the [c]ourt, an evidentiary proffer that there's certain testimony that would be elicited at a motions hearing.

This is a motion hearing. This is not a trial, but rather this is a motions hearing and so technically, . . . the first witness should be your witness—

[APPELLANT'S COUNSEL]: All right.

THE COURT:—to support the motion.

[APPELLANT'S COUNSEL]: All right. I'll just make a record.

. . .

THE COURT: So, State want to call a witness? Somebody want to call a witness?

[APPELLANT'S COUNSEL]: I believe it's the State's burden, Your Honor. I think they should call a witness.

THE COURT: Well, I don't believe it is the State's burden.

. . .

[APPELLANT'S COUNSEL]: In all my years of practice, I've never had to—I'm flabbergasted. I've never had this to [sic] happen before.

THE COURT: I have.

[APPELLANT'S COUNSEL]: Okay. Not in my experience. But, you know, but I could certainly be wrong about that. I disagree with Your Honor about that. I'm not prepared to put on a witness.

THE COURT: That means you're submitting?

[APPELLANT'S COUNSEL]: No, Your Honor. We don't believe the State has shown that they—this evidence was the result of a legal stop and search.

THE COURT: All right. So you're not presenting any evidence to support your position that it was an illegal search and seizure.

[APPELLANT'S COUNSEL]: No. I believe the State has the burden to show that, Your Honor.

THE COURT: You know, [appellant's counsel], we can sit here and fight about this for the rest of the afternoon, but I don't intend to do that.

If you're not planning on putting on any evidence in support of a motion, then I guess I'll hear from you. There are witnesses we've made available for you in support of your motion to suppress.

If you do not have any witness or any testimony and you only want to proffer, I'll take a proffer of evidence from you on the record.

Appellant's counsel submitted the evidence he had planned to present at the hearing by proffer. The State's Attorney decided to "err on the side of caution," calling Officers Giblon and Stephens to testify. After appellant testified in rebuttal, the court heard argument from both parties. It then issued a ruling from the bench denying the motion to suppress.

 "As a general rule, the moving party on any proposition, civil or criminal, has the burden of production and the burden of persuasion." *Herbert v. State*, 136 Md.App. 458, 481, 766 A.2d 190 (2001). This rule applies to a suppression hearing before a criminal trial when the defendant bears the burden of showing that the search or seizure in the case was illegal and the fruits thereof should be suppressed. *Id.* at 482,

766 A.2d 190. The burdens of production and persuasion may shift, however, as "a direct consequence of the [United States] Supreme Court's strong preference for searches and seizures pursuant to judicially approved warrants over warrantless searches and seizures." *Herbert,* 136 Md.App. at 485, 766 A.2d 190; *see also Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

> When the police execute a search under authority of a facially adequate warrant, it is presumptively good and the burden is upon the defendant to establish its invalidity. Where the evidence is inconclusive in this regard, the State wins. Where, on the other hand, the defendant establishes initially that the police proceeded warrantlessly, the burden shifts to the State to establish that strong justification existed for proceeding under one of the "jealously and carefully drawn" exceptions to the warrant requirement. Where the evidence is inconclusive in this regard, the defendant wins.

*Duncan,* 27 Md.App. at 304–05, 340 A.2d 722 (citations omitted).

In the case *sub judice,* the colloquy quoted above leaves no doubt that the court placed the burden of production on appellant; it asked his counsel several times either to put on the first witness or submit. As to the burden of persuasion, the following exchange is illuminating:

> [APPELLANT'S COUNSEL]: ... It's not—it's not my burden to prove that it was a legal search and stop. I think the State—
>
> THE COURT: It's your burden because you've made a motion to show me some reason why you have a motion to suppress.

The court's statement, taken alone, could be interpreted as an allocation of the burden of production, but the context of the exchange indicates that the court placed the burden of persuasion, or burden of proof, on appellant as well. This allocation of burdens was erroneous because appellant had

informed the court before the hearing that the search and seizure were not conducted pursuant to a warrant. The burdens of production and persuasion on the merits of suppression therefore had been shifted to the State. These errors, however, were harmless because the allocation of burdens had no effect on the court's ruling on the motion.

■ The burden of proof on the merits at a suppression hearing is by a preponderance of the evidence. *Duncan,* 27 Md.App. at 304, 340 A.2d 722 (citing *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972)). The Maryland Pattern Jury Instructions (MPJI) define this standard as follows:

To prove by a preponderance of the evidence means to prove that something is more likely so than not so.

MPJI 1:7a (3d ed. 1993 & 2000 Supp.). Therefore, when the court at a suppression hearing finds it more likely than not that evidence was obtained illegally, it should suppress the evidence. If, on the other hand, the court finds it more likely that the evidence was legally seized, it should deny the motion and allow the evidence to be introduced at trial. It is only when the court finds the evidence on each side of the issue to be equally persuasive that it must consider by which party the burden of proof is borne. *See id.* ("If you believe that the evidence is evenly balanced on an issue, then your finding on that issue must be against the party who has the burden of proving it."). Unless the court finds the evidence to be in this state of equipoise, the burden of proof has no effect on its disposition of the motion to suppress.

The record in the case *sub judice* reveals that the court did not consider the evidence to be equally balanced. After appellant had testified in rebuttal and his counsel had made an argument for suppression, the prosecutor began his argument. The court interrupted the prosecutor and the following colloquy occurred:

THE COURT: You would admit that if the officer stopped him from crossing street [sic] when the light turned green, that that's a stop.

[PROSECUTOR]: Yes.

THE COURT: Okay.

[PROSECUTOR]: Absolutely. But fortunately enough for the State in this situation, within thirty seconds to a minute, the suspicion was already aroused ... [when appellant] was pointing in the wrong direction up Charles Street and [saying] I got it in the alley. . . .

THE COURT: Wasn't the suspicion already aroused when the officer saw him going—walking down the street in close proximity—

[PROSECUTOR]: Yes.

THE COURT:—to the report—

[PROSECUTOR]: Yes.

THE COURT:—that she received over [the radio]?

[PROSECUTOR]: Yes, absolutely.

THE COURT: Wasn't that the beginning of her reasonable suspicion?

[PROSECUTOR]: Absolutely.

THE COURT: And wasn't it just building blocks that just kept on going?

[PROSECUTOR]: Absolutely.

THE COURT: Right on down to the point where he was arrested?

[PROSECUTOR]: Absolutely. But the focus is on the police officers.

THE COURT: That's what I'm talking about.

[PROSECUTOR]: Yeah, absolutely. And—and if the [c]ourt wishes to-for me to address that further, I—

THE COURT: I don't think you need to address it any further.

[PROSECUTOR]: Okay. Completely agree with what the [c]ourt is saying. It's been referred to very briefly, Your Honor, that it was a hunch. It wasn't just a hunch.

THE COURT: It wasn't a hunch. I—I don't—you don't really need to argue any further.

The court then announced its denial of the motion. It is clear from this exchange that the court did not find that the evidence was legally or illegally seized to be equally persuasive; rather, it was convinced that the evidence of the legality of the seizure was compelling. Its misallocation of the burden of proof therefore had no effect on its consideration of the motion.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**