OPINION
{¶ 1} Defendant-appellant, Richard Kelley, appeals his convictions in the Warren County Court of Common Pleas for abduction and assault. We affirm.
 {¶ 2} According to the state's version of events, on April 1, 2001, appellant, an Ohio State Highway Patrol trooper, went to a Dayton, Ohio adult club accompanied by Dana Jones, a police officer with the city of Cincinnati. Jones testified that she had six drinks at the club while appellant drank "prior to going to the club, on the way to the club, and at the club." While at the club, appellant and Jones had an argument. They eventually left the club at approximately 3:45 a.m.
 {¶ 3} Jones decided she did not want to go home with appellant and wanted to telephone an acquaintance for a ride home. Before she could exit appellant's vehicle, however, appellant drove off and headed south on Interstate 75. When Jones then attempted to call a fellow Cincinnati police officer, appellant grabbed her cellular phone and threw it into the rear of his vehicle. Jones climbed into the back seat to retrieve her phone. She could not, however, find the phone's battery which had become detached. Without the battery, Jones' phone was inoperable.
 {¶ 4} The argument that had begun at the Dayton night spot continued as appellant and Jones drove south on Interstate 75. Jones asked appellant to pull over and allow her to exit the vehicle. At one point, Jones even opened the passenger door of the moving vehicle to demonstrate the seriousness of her request.
 {¶ 5} At an exit ramp near Middletown, Ohio, appellant pulled over to the shoulder but was so close to a guardrail that Jones could not open the door enough to exit the vehicle. Jones claimed that appellant became upset when she opened the door into the guardrail and damaged the vehicle. Appellant then exited the vehicle and came around to the passenger side where he struck Jones several times. As appellant returned to the driver's side, Jones "squeezed out of the opening, and just took off down the road, * * * to get away from there." Appellant then drove past Jones, got out of the vehicle, and struck and hit Jones several more times before forcing her back into the vehicle. Jones claimed that when she eventually told appellant she would "go home with him," appellant's demeanor changed and he even found the battery for Jones' cellular telephone.
 {¶ 6} Once her phone was working again, Jones contacted a fellow officer in her department. The officer suggested that Jones remain quiet and avoid doing anything to exacerbate the situation until she could exit the vehicle. Jones did so until she and appellant arrived at her home in the suburban Hamilton County city of Forest Park.
 {¶ 7} When she arrived home, Jones contacted the Forest Park police and reported a "domestic situation." Officers responding to Jones' residence did not arrest appellant. Police would not allow appellant to drive home, however, since he had a strong odor of alcoholic beverages about him and admitted that he had been drinking. Forest Park police transported appellant to their station where he was provided access to a telephone.
 {¶ 8} Appellant admitted that he had been drinking at the club earlier that evening. According to his testimony, Jones voluntarily agreed to leave the club with him. As they drove home, appellant claimed that Jones hit him in the face with her cellular phone and that he grabbed Jones' wrist, at which point she dropped the phone and it fell into the back seat of his vehicle.
 {¶ 9} Appellant testified that because of his position as a highway patrolman, he restrained Jones from exiting the vehicle while it was traveling at 60 to 65 miles per hour for her own safety. He also claimed that he did not want to exit Interstate 75 and allow Jones out of the vehicle since it was late and he did not want to leave her alone.
 {¶ 10} When he pulled over next to the guardrail, appellant claimed he was simply stopping to search the back seat for Jones' cellular phone battery. After he found the battery, appellant looked up only to see Jones walking down Interstate 75 and staggering out toward the highway. Appellant submitted that he convinced Jones to return to the vehicle because it was illegal for pedestrians to be on the highway. According to appellant, Jones came back to his vehicle, opened the passenger door into the guardrail, and entered the vehicle. The two then drove to Jones' Forest Park home.
 {¶ 11} After he was taken to the Forest Park police station, appellant telephoned the Ohio State Highway Patrol. As a result, Sergeant James Ertel of the highway patrol came to the station and spoke with appellant and Jones.
 {¶ 12} Sgt. Ertel testified that he told appellant he was under investigative detention. Appellant then asked if "this was going to affect my job?" Sgt. Ertel replied, "I don't have any say over whether this affects your job or not, * * * I'm doing the criminal investigation, a criminal investigation only." Sgt. Ertel then read appellant his Miranda rights before taking any statement from appellant. Appellant did not sign the Miranda card, but acknowledged that the card was read to him by initialing the card after each of the five warnings. Sgt. Ertel testified that at no time did appellant indicate he wanted counsel present. Appellant gave an oral statement which Sgt. Ertel transcribed. Appellant then read and signed each page of the statement. Appellant was subsequently arrested and charged with abduction, assault, and disruption of public services.
 {¶ 13} Following a trial by jury, appellant was found guilty of abduction and assault. Appellant was acquitted of disruption of public services. This appeal follows in which appellant raises two assignments of error.
Assignment of Error No. 1:
 {¶ 14} "THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE."
 {¶ 15} Appellant argues that where "the State fails to meet it's [sic] burden of proof of Preponderance of the Evidence in a Motion to Suppress hearing regarding Defendant's waiver of his rights, the Defendant's Motion to Suppress should not have been denied." Appellant maintains he refused to sign the Miranda card that was read to him because he requested an attorney. Appellant asserts that Sgt. Ertel indicated he would arrest appellant if he did not answer questions, but advised him if he did, he could go home. Therefore, appellant argues his statements to Sgt. Ertel should have been suppressed.
 {¶ 16} Upon reviewing a trial court's denial of a motion to suppress, this court must determine whether there was sufficient evidence upon which the trial court could find by a preponderance of the evidence that the statements were voluntarily given. Lego v. Twomey (1972),404 U.S. 477, 485, 92 S.Ct. 619, 624; State v. Melchoir (1978),56 Ohio St.2d 15, 25. The mere fact there is "`detention and police examination in private of one in official state custody' does not render involuntary a confession by the one so detained." Crooker v. California
(1958), 357 U.S. 433, 437, 78 S.Ct. 1287, 1290, overruled on other grounds Miranda v. Arizona (1966), 384 U.S. 436, 479, 86 S.Ct. 1602,1630.
 {¶ 17} The test for voluntariness, as enunciated by the Supreme Court of Ohio in State v. Edwards (1976), 49 Ohio St.2d 31, vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147, looks to the totality of the circumstances surrounding the defendant's statement. "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." Edwards at paragraph two of the syllabus.
 {¶ 18} Looking at the totality of the circumstances, Sgt. Ertel informed appellant he was conducting a criminal investigation. Sgt. Ertel read appellant his Miranda rights and appellant acknowledged that he had been informed of his rights. According to Sgt. Ertel, appellant never indicated that he wanted counsel present. Finally appellant gave a statement to Sgt. Ertel after having been informed of his rights.
 {¶ 19} Appellant also argues that under Garrity v. New Jersey
(1976), 385 U.S. 493, 87 S.Ct. 616, "any statements taken during an administrative investigation are not admissible in a criminal action against a law enforcement officer." However, the exact language of theGarrity rule is as follows: "We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat ofremoval from office, and that it extends to all, whether they are policemen or other members of our body politic." Garrity at 500. (Emphasis added.) Appellant was not threatened with removal from office. Therefore, the Garrity rule is not applicable to this case.
 {¶ 20} Based on the record of the suppression hearing, there was sufficient evidence upon which the trial court could find by a preponderance of the evidence the statement was voluntarily given. The trial court did not err by denying appellant's motion to suppress his statements. Therefore, the first assignment of error is overruled.
Assignment of Error No. 2:
 {¶ 21} "THE JUDGMENT OF CONVICTION OF ABDUCTION AND ASSAULT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 22} Appellant argues when "the evidence submitted is insufficient to prove the elements of the offenses charged, the convictions should be overturned." Appellant argues, as an off-duty State Highway Patrol trooper, he had a duty under R.C. 2921.44 to prevent or stop the commission of an offense. Appellant maintains he was preventing Jones from becoming a pedestrian on Interstate 75, in violation of R.C. 4511.051. Furthermore, appellant maintains that Jones produced no medical records showing any serious injury. Therefore, appellant argues these facts do not support a finding of abduction or assault.
 {¶ 23} When a defendant asserts that a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. See, also, State v. Otten (1986),33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact. State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, at 4.
 {¶ 24} The elements of assault are set forth in R.C. 2903.13(A): "No person shall knowingly cause or attempt to cause physical harm to another." R.C. 2901.01(A)(3) defines physical harm as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." (Emphasis added.) When accompanied "by the requisite intent, a `* * * shove, push or grab * * *' may satisfy the `physical harm' element of assault." State v. Williams, Franklin App. No. 01AP-254, at 5, 2001-Ohio-8876. See, also, In re Pollitt (Oct. 10, 2000), Adams App. No. 00 CA 687; and State v. Neff (Sept. 30, 1992), Franklin App. No. 92AP-655.
 {¶ 25} Photographs of Jones' injuries were presented at trial. Sgt. Ertel testified that the photographs reflected the injuries he observed when interviewing Jones. Sgt. Ertel stated, "Jones had obvious injury to her facial area. Her eyes were bruising and blued, she had some dried blood on her lips, her lips were swollen, she had several marks, redness, abrasions around her face and in her neck and in her lower neck and upper chest area that I could see." Jones testified that appellant was the cause of the injuries. Thus, appellant's assault conviction is not against the weight of the evidence.
 {¶ 26} The elements of abduction are set forth in R.C. 2905.02
which provides: "(A) No person, without privilege to do so, shall knowingly do any of the following: * * * (2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear."
 {¶ 27} Sgt. Ertel testified that when he asked appellant, "[d]id she want out? He said, `Yes, several times.'" Jones testified she was in fear for her life while in appellant's vehicle. Jones also testified that she was restrained in the vehicle when she asked to exit. Appellant claimed he was restraining Jones for her own safety. Appellant hit Jones when she requested to exit the vehicle. The evidence indicates that Jones was forcibly restrained by appellant which placed her in fear. The weight of the evidence supports appellant's abduction conviction.
 {¶ 28} Having reviewed the record, this court finds that this appeal does not present extraordinary circumstances requiring the reversal of a jury verdict as being against the manifest weight of the evidence. While some testimony was divergent, the overall account was consistent in demonstrating that appellant physically restrained Jones in his vehicle when she wished to exit and appellant caused Jones fear and physical harm.
 {¶ 29} The evidence does not weigh heavily in favor of appellant, and this court cannot say that the jury clearly lost its way in resolving conflicts in the testimony. As such, appellant's second assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and VALEN, J., concur.