**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1776
_____

UNITED STATES OF AMERICA

v.

ANTHONY E. MONTGOMERY,
        Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 3-09-cr-000386-001)
District Judge: Honorable Anne E. Thompson
_____

Submitted Under Third Circuit LAR 34.1(a)
November 18, 2010

Before:   BARRY, CHAGARES, and VANASKIE, <u>Circuit</u> <u>Judges</u>.

(Filed: December 14, 2010 )
_____

OPINION OF THE COURT
_____

VANASKIE, Circuit Judge.

Appellant Anthony E. Montgomery ("Montgomery") appeals the District Court's denial of his motion to suppress his confession as involuntary. Although he admits to being a "seasoned arrestee," he claims that his "mental state, coupled with [an FBI Agent's] false promise of an immediate transfer into federal custody in exchange for [his] confession, was so powerful as to negate the voluntariness of Montgomery's confession." (Appellant's Br. at 14.) The Government argues that the record supports the voluntary nature of Montgomery's confession and, therefore, the District Court's denial of his motion to suppress should be affirmed.

The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. For the following reasons, we will affirm the judgment of the District Court.

## I.

On May 1, 2008, Montgomery was arrested on state charges after he fled a motor vehicle traffic stop in Tinton Falls, New Jersey. After his arrest, Montgomery was sent to Monmouth County Correctional Institute ("MCCI"), a New Jersey state prison facility. While at MCCI, Montgomery became a suspect in a federal investigation concerning the armed robbery of a Sovereign Bank branch in Toms River, New Jersey.

Eight days after Montgomery's arrest, FBI Special Agent R. J. Gallagher met with him to take his fingerprints and ask him about the bank robbery. Montgomery told Gallagher that he had "no statement" concerning the robbery, and the interview ceased. Subsequently, Agent Gallagher obtained via subpoena recordings of Montgomery's

2

phone calls from the MCCI and listened to them as part of his bank robbery investigation. According to Agent Gallagher, Montgomery's telephone calls made references to a potential prison escape, and he alerted MCCI authorities. Consequently, Montgomery was moved from the general population to J-Pod, an area used to house prison inmates who require greater supervision.

While in J-Pod, Montgomery was charged with committing, inter alia, Unlawful Possession of a Weapon, Aggravated Assault, Assault of a Corrections Officer, Criminal Attempt, and Possession of Escape Implements. On May 27, 2008, MCCI correctional officers found a "shank" knife in Montgomery's possession, and on November 7, 2008, several correctional officers restrained Montgomery, who was assaulting another correctional officer. As a result of these incidents, Montgomery alleged that various correctional officers retaliated against him by tampering with his food and verbally abusing him. He claimed, moreover, to be frequently shuffled between prison cells, unable to sleep, and continuously hungry because he refused to eat his meals.

Unhappy with his prison conditions, Montgomery directed his attorney to file a motion to have him transferred to another state prison institution. After his motion was denied, Montgomery told his attorney to set up a meeting with Agent Gallagher, to inform the agent that he desired to be transferred into federal custody, and to notify Agent Gallagher that he would be "interested" in what Montgomery had to say. In his own words, Montgomery "[p]retty much" understood that if he gave a statement to Agent Gallagher, then he would be transferred to a federal correctional facility. (A. 126.) Agent Gallagher, however, merely indicated to Montgomery's attorneys that he believed

3

it was possible to move their client into federal custody, and never promised counsel that such a transfer could be arranged. (A. 135, 137, 144.)

On March 16, 2009, Agent Gallagher interviewed Montgomery concerning the Sovereign Bank robbery in Toms River. The interview was videotaped and a transcript was made. Agent Gallagher read Montgomery his Miranda rights, which Montgomery waived, agreeing to speak without his attorney present. (A. 242-43.) In fact, prior to the interview, Montgomery had made it clear to his attorney that he wanted to talk to Agent Gallagher by "himself," and that "[h]e didn't want [counsel] there." (A. 107.) After reading Montgomery his rights, Agent Gallagher stated that he was "not here to make any promises . . . [and] I can't promise you anything[.]" (A. 243.) Nonetheless, Montgomery proceeded to fully confess that he committed the bank robbery, and details of how he committed it.

Subsequently, Montgomery filed a motion to suppress his confession. Finding that the confession was made knowingly and voluntarily, the District Court denied Montgomery's motion. After a bench trial, the District Court found Montgomery guilty of bank robbery by force or violence, in violation of 18 U.S.C. § 2113(a) and (d), and of using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). Following entry of the judgment of conviction and sentence, Montgomery timely appealed, challenging only the denial of his suppression motion.

## II.

It is well settled that "only voluntary confessions may be admitted at the trial of guilt or innocence[.]" United States v. Swint, 15 F.3d 286, 288-89 (3d Cir. 1994)

4

(quoting Lego v. Twomey, 404 U.S. 477, 478 (1972)).  "To determine the voluntariness of a confession, the court must consider the effect that the totality of the circumstances had upon the will of the defendant." Miller v. Fenton, 796 F.2d 598, 604 (3d Cir. 1986) (citations omitted).  "The question in each case is whether the defendant's will was overborne when he confessed." Id.  "In determining whether a defendant's will was overborne in a particular case, the Court has assessed . . . both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) (listing factors such as youth of accused, lack of education, lack of advising accused of constitutional rights, repeated and prolonged interrogation, "and the use of physical punishment such as the deprivation of food or sleep") (citations omitted).  We "review the district court's denial of the motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts." United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003) (internal quotation marks, brackets, and citations omitted).

Applying the totality of the circumstances test and discerning no clear error as to the District Court's factual findings, we conclude that Montgomery's confession was made voluntarily and knowingly.  He was a seasoned arrestee and was explicitly advised of his constitutional rights.  While it does appear that he was sleep-deprived and felt mistreated by the correctional officers, the record undisputedly shows that Mr. Montgomery initiated the interview by directing his attorney to set up a meeting with Agent Gallagher to discuss the Sovereign Bank robbery.  (A. 242-43.)  Agent Gallagher's conduct was not coercive.  While he informed MCCI authorities that Montgomery was

5

making possible escape references on the telephone,[1] he had nothing to do with where Montgomery was relocated. Agent Gallagher was never asked, nor did he express an opinion, concerning Montgomery's prison cell arrangements. Additionally, Agent Gallagher stated repeatedly to Montgomery that he was not making any promises in exchange for the confession. (A. 243, 244, 246, 268, 272, 275.) As the District Court aptly noted, the "fact that [Mr. Montgomery] had an agenda of his own—i.e., to transfer into federal custody—does not transform this interaction with federal agents into a forced confession." (A. 8-9.) Ultimately, Montgomery's "confession [was] the product of an essentially free and unconstrained choice[.]" Schneckloth, 412 U.S. at 225.

III.

For the foregoing reasons, we will affirm the District Court's judgment.

---

1       Montgomery stated, inter alia, on the telephone:

He will be out soon; When his opportunity comes, he will be taking it; 'When this shit happens, no one will believe it;' He will be on the run; The whole 'hood' will be talking about him and what he has done; His stock will be the highest in the hood.

(A. 197.)